UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

ADRIANA TIBBETTS and DARRYL
TIBBETTS, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

**Case No.: 17-cv-00968-LDW-AYS**

                           Plaintiffs,

                -against-

THE CHEESECAKE FACTORY
RESTAURANTS, INC.,

                          Defendant.

-------------------------------------------------------------X

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

---

IACONIS FUSCO, LLP
Joseph P. Fusco, Esq.
Attorneys for Plaintiffs and the Class
340 Trinity Place
Malverne, NY 11565
(516) 535-9295

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**………………………………………………………………..1

**STATEMENT OF FACTS**…………………………………………………………………4

**ARGUMENT**………………………………………………………………………….4

    **A.** **Applicable Legal Standard**……………………………………………………………4

    **B.** **FACTA's Truncation Right Is Substantive**………………………………………………5

    **C.** **Cheesecake Caused Plaintiffs Multiple Concrete Injuries**…………………………………5

    **D.** **Plaintiffs Sustained a Privacy Injury**…………………………………………………14

    **E.** **Plaintiffs' Lost Time is a Concrete Injury**……………………………………………15

    **F.** **Plaintiffs Adequately Pled a Willful FACTA Violation**………………………………15

    **G.** **Cheesecake Must Prove That Plaintiff's Willfulness Allegation Is Nothing More Than Speculative**………………………………………………………………..16

    **H.** **Plaintiffs' Willfulness Allegation is Not Speculative**…………………………………17

    **I.** **Plaintiff Plausibly Alleged a Knowing Violation**……………………………………..18

        **i.** **Plaintiff's Allegations Are Sufficient**……………………………………….18

        **ii.** **Cheesecake Misconstrues the Facts and the Test for Knowing Violation**……19

    **J.** **The Complaint Plausibly Alleges a Reckless Violation**………………………………20

        **a.** **Plaintiff's Allegations Are Sufficient**………………………………………21

        **b.** **Cheesecake Offers Nothing to Show that Plaintiffs Fail to Plausibly Allege a Reckless Violation**……………………………………………22

**CONCLUSION**………………………………………………………………24

## **TABLE OF AUTHORITIES**

**Cases**

*Alexander v. Golden Nugget, Inc.*, 2014 WL 12576611 (D. Nev. Jul. 18, 2014)................20

*Ali v. Playgirl, Inc.*, 447 F. Supp. 723 (S.D.N.Y. 1978)................................................14

*Altman v. White House Black Mkt., Inc.*, No. 1:15-cv-2451-SCJ,
2016 U.S. Dist. LEXIS 92761 (N.D. Ga. July 13, 2016)...........................................1

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)................................................................16

*Baur v. Veneman*, 352 F.3d 625, 633 (2d Cir. 2003)....................................................2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)....................................16, 17

*Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir. 1990).....................................................12

*Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996)........................................................19

*Boelter v. Hearst Commc'ns, Inc.*, 2016 U.S. Dist. LEXIS 85025 (S.D.N.Y. June 17, 2016)..2

*Buechler v. Keyco, Inc.*, 2010 WL 1664226 (D. Md. Apr. 22, 2010).............................21

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016).....................................5

*Church v. Accretive Health, Inc.*, 2016 U.S.  App. LEXIS 12414 (11th Cir. July 6, 2016)......2, 6

*Church v. Accretive Health, Inc.*, 654 Fed.Appx. 990 (11th Cir. 2016)...........................13

*Cruper-Weinmann v. Paris Baguette America, Inc.*,

-- F. Supp.3d --, 2017 WL 398657 (S.D.N.Y. Jan. 30, 2017)....................................12

*Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005)........................4, 5

*Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170 (2d Cir. 2012)..................*passim*

*E.M. v. New York City Dep't of Educ.*, 758 F.3d 442 (2d Cir. 2014).........  ...............8

*Erickson v. Pardus*, 551 U.S. 89 (2007)...............................................................16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)............5, 8

*Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 249 (3rd Cir. 2012)...................21, 23

*Fullwood v. Wolfgang's Steakhouse, Inc.*, 2017 WL 377931, (S.D.N.Y. Jan. 26, 2017).........12

*Guarisma v. Microsoft Corp.*, No. 15-cv-24326-ALTONAGA/O'Sullivan,

2016 U.S. Dist. LEXIS 97729 (S.D. Fla. July 26, 2016)...........................................1

*Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511 (D.C. Cir. 2016)…………………….……12, 13

*Havens Realty Corp.* v. *Coleman*, 455 U.S. 363 (1982)……………………………………*passim*

*In re Barclays Bank PLC Sec. Litig.*,

2016 U.S. Dist. LEXIS 75663 (S.D.N.Y. June 9, 2016)………………………….…..*passim*

*In re Inv'rs Funding Corp. of New York Sec. Litig.*, 523 F Supp 533 (S.D.N.Y. 1980)……....18

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,

846 F.3d 625 (3d Cir. 2017)……………………………………………………..…….5

*In re Nickelodeon Consumer Privacy Litig.*,

2016 U.S. App. LEXIS 11700 (3d Cir. June 27, 2016)………………………….………………2

*In re TJX Companies, Inc.*, 2008 WL 2020375 (D. Kan. May 9, 2008)…………………..……18

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697 (2d Cir.1994)………………19

*Jaffe v. Bank of Am., N.A.*, No. 13 CV 4866  (VB),

2016 U.S. Dist. LEXIS 92899 (S.D.N.Y. July 15, 2016)……………………….…………..1

*Khan v. Children's Nat'l Health Sys.*, 188 F.Supp.3d 524 (D. Md. 2016)……………...........11

*King v. MovieTickets, Inc.*, 555 F.Supp.2d 1339, 1341 (S.D. Fla. 2008)………………………19

*Lavery v. Radioshack Corp.*, 2014 WL 2819037 (N.D. Ill. June 23, 2014)…………………18, 19

*Lee v. Verizon Comms., Inc.*, 837 F.3d 523 (5th Cir. 2016)…………………………………12, 13

*Linda R. S.v. Richard D.*, 410 U.S. 614 (1973)……………………………………..……...8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)……………………………………………5

*Matera v. Google Inc.*, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016)…………………………13

*Meyers v. Nicolet Rest of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016)…………………………12

*Mount v. PulsePoint, Inc.*, No. 13 Civ. 6592 (NRB)

2016 U.S. Dist. LEXIS 112315 (S.D.N.Y. Aug. 17, 2016) ………………………….…….....1

*Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716, Doc. 26 (S.D. Fla. Sept. 2, 2015)………..18

*Murray v. New Cingular Wireless Servs., Inc.* 523 F.3d 719, 726 (7th Cir. 2008)………………21

*Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71 (2d Cir. 2013)………5

*Nicklaw v. Citimortgage*, 839 F.3d 998 (11th Cir. 2016)……………………………………...11

*Pavesich v. New Eng. Life Ins. Co.*, 50 S.E. 68 (Ga. 1905)……………………………………..14

*Prindle v. Carrington Mortg. Servs., LLC*, 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016)….13

*Ramirez v. Midwest Airlines, Inc.*, 537 F.Supp.2d 1161, 1169 (D. Kan. 2008)………………23

*Redman v. IMAX Chicago Theatre LLC*, 2015 WL 327130 (N.D. Ill. Jan. 23, 2015)……..I

*Rosenthal v. Longchamp Coral Gables LLC*,
2009 WL 1854846 (S.D. Fla. June 29, 2009)…………………………………………..…20, 21

*Ross v. Bank of Am., N.A.*, 524 F.3d 217 (2d Cir. 2008)………………………………………...4

*Ruk v. Crown Asset Mgmt., LLC*, 2017 U.S. Dist. LEXIS 41797 (N.D. Ga. Mar. 22, 2017)…..11

*Safeco Ins. Co of Am. v. Burr*, 551 U.S. 47, 57 (2007)…………………………………..…………17

*Schleisinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974)……………………..…5

*Sec. & Exchange Comm'n v. Gib. Global Sec., Inc.*,
2015 U.S. Dist. LEXIS 43773, (S.D.N.Y. Apr. 1, 2015)……………………………………..…14

*Sierra Club v. Morton*, 405 U.S. 727
(1972)… … … … … … … … … … … … … … … … … … … … … … … … … … … . 8

*Soualian v. Int'l Coffee & Tea, LLC*, 2008 WL 410618 (C.D. Cal. Feb. 9, 2008)………………23

*Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010)..…..16

*Speer v. Whole Food Mkt. Group, Inc.*, 2015 WL 1456981 (M.D. Fla. Mar. 30, 2015)………..17

*Spokeo, Inc. v. Robins*, -- U.S. --, 136 S.Ct. 1540 (2016) ................................................... *passim*

*Steinberg v. Stitch & Craft, Inc.*, 2009 WL 2589142 (S.D. Fla. Aug. 18, 2009)…………………18

*Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016)…………………………………*passim*

*Tchoboian v. FedEx Office & Print Servs.*, 2011 WL 12842230(C.D. Cal. Nov. 14, 2011)…21

*Tennessee Elec. Power Co. v. TVA*, 306 U.S. 118 (1939)………………………………………7

*Torongo v. Roy*, 176 F.Supp.3d 1320, 1324 (S.D. Fla. 2016)…………………………..………19

*Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972)………………………..………8

*Vidoni v. Arcadia Corp.*, 2012 WL 1565128, *3 (D. Me. Apr. 27, 2012)……………..……*passim*

*Warth v. Seldin*, 422 U.S. 490, 500 (1975)………………………………………………..………5, 8

*Whalen v. Michaels Stores, Inc.*, -- Fed. Appx. --, 2017 WL 1556116 (2d Cir. May 2, 2017)…13

*Wood v. J Choo USA, Inc.*, No. 15-cv-81487-BLOOM/Valle,
2016 U.S. Dist. LEXIS 106029 (S.D. Fla. Aug. 11, 2016)……………………………………1

iv

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,

412 U.S. 669 (1973)…………………………………………………………………..…….5

## **Statutes**

15 U.S.C. §1681c(g)(1)…………………………………………………………………*passim*

The Cheesecake Factory Restaurants, Inc. ("Cheesecake") caused Plaintiffs concrete harm when it violated their substantive, statutorily protected rights by printing their personal financial information in a manner forbidden by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA").

## PRELIMINARY STATEMENT

Various courts have analyzed the issue of Article III standing with respect to FACTA pursuant to *Spokeo, Inc. v. Robins* and have found that merchants cause consumers a concrete injury in fact by printing their personal financial information in violation of FACTA's substantive provisions. *See Wood v. J Choo USA, Inc.*, No. 15-cv-81487-BLOOM/Valle, 2016 U.S. Dist. LEXIS 106029, at *15–18 (S.D. Fla. Aug. 11, 2016) (printing expiration date); *Guarisma v. Microsoft Corp.*, No. 15-cv-24326-ALTONAGA/O'Sullivan, 2016 U.S. Dist. LEXIS 97729, at *11–12 (S.D. Fla. July 26, 2016) (printing more than last five digits of card number); *Altman v. White House Black Mkt., Inc.*, No. 1:15-cv-2451-SCJ, 2016 U.S. Dist. LEXIS 92761, at *11–21 (N.D. Ga. July 13, 2016) (printing more than last five digits of card number). However, Cheesecake wants this Court deviate from the accepted interpretation of *Spokeo*, while failing to offer a good reason for doing so and no alternative other than to ignore an unambiguous statute.

Courts interpreting *Spokeo* throughout the United States have rejected Cheesecake's contention and upheld, under Article III, the sufficiency of similar claims alleging violations of substantive rights under FACTA. There can be no question that the substantive rights granted to individuals of the United States by specific statute in order to protect them from substantive harm is distinguished from the procedural rights discussed in *Spokeo*. *See Mount v. PulsePoint, Inc.*, No. 13 Civ. 6592 (NRB), 2016 U.S. Dist. LEXIS 112315, at *12–14 (S.D.N.Y. Aug. 17, 2016) (Buchwald, J.) (tracking online browsing without permission); *Jaffe v. Bank of Am., N.A.*, No. 13 CV 4866  (VB), 2016 U.S. Dist. LEXIS 92899, at *9–12 (S.D.N.Y. July 15, 2016) (Briccetti, J.) (failure to timely record mortgage satisfactions pursuant to recordation statute);

1

*Boelter v. Hearst Commc'ns, Inc.*, Nos. 15 Civ. 3934 (AT), 15 Civ. 9279 (AT), 2016 U.S. Dist. LEXIS 85025, at *8–11 n.4 (S.D.N.Y. June 17, 2016) (Torres, J.) (selling personal information to data mining companies); *In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989 (PAC), 2016 U.S. Dist. LEXIS 75663, at *18–22 (S.D.N.Y. June 9, 2016) (Crotty, J.) (untruthful information in stock registration statements); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414, at *6–11 (11th Cir. July 6, 2016) (failure to provide disclosures mandated by Fair Debt Collection Practices Act); *In re Nickelodeon Consumer Privacy Litig.*, No. 15-1441, 2016 U.S. App. LEXIS 11700, at *19–22 (3d Cir. June 27, 2016) ("*Nickelodeon II*") (surreptitiously tracking web browsing history).

In an effort to thwart consumers' private financial information from ending up in the hands of identity thieves, after extensive fact-finding, Congress passed FACTA. Indeed, Cheesecake's misconduct is identical to the conduct Congress determined to be an unacceptable risk to consumers. In an effort to protect consumers from this risk, Congress elevated the harm caused by printing consumers' financial data to an injury that is cognizable at law.  FACTA thereby protected consumers from known harms, previously not cognizable at law. Congress managed the problem by enacting a law against printing consumers' private data. Cheesecake's violation of that law is undoubtedly fundamentally different from the procedural violations discussed in *Spokeo*. With its motion, Cheesecake asks this Court to re-write legislation and alter Congress's specific determination that the personal financial information at issue here must not be printed on credit card receipts.

This Court must recognize that Congress did not undermine any longstanding principles of Article III standing jurisprudence when it passed FACTA. This Circuit has continuously held that a plaintiff enjoys constitutional standing when she alleges that the defendant's conduct places her at an increased risk of a highly destructive event. *See, e.g.*, *Baur v. Veneman*, 352 F.3d 625, 633 (2d Cir. 2003). This principle should not be altered when Congress has identified a particular risk as being unacceptable as a matter of law, and crafted statutory procedures to protect the public from such a risk by granting the public substantive rights. *See Donoghue v.*

*Bulldog Investors Gen. P'ship*, 696 F.3d 170, 177–78, 180 (2d Cir. 2012) (corporation suffered a concrete harm when an investor with 10% beneficial ownership engaged in short swing trading, in violation of "flat rule" prohibition codified at § 16(b) of the Securities Exchange Act of 1934).

Here, there is no question that Cheesecake knew FACTA prohibited Cheesecake from printing point-of-sale transaction receipts that reveal more than the last five digits of a consumer's debit and credit card number. However, Cheesecake allowed its computerized payment system to routinely print ten digits, thus giving Cheesecake employees and anyone else who saw the receipts (that are routinely left unattended on the tables of Cheesecakes 208 restaurants), access to this information, and forcing Plaintiffs to take steps to protect the receipt from further disclosure. Tibbetts Declaration, attached as Exhibit 1.

Cheesecake is trying to avoid the consequences of its illegal conduct by asserting the Court lacks the power to decide the case and/or that Plaintiffs fail to state a claim. However, these arguments lack merit.

Cheesecake's argument that Plaintiff cannot clear the low "injury in fact" hurdle fails because Cheesecake's actions caused Plaintiff multiple Article III injuries. Based upon Supreme Court authority, post *Spokeo* decisions have held that a violation of a plaintiff's substantive FACTA rights demonstrates a concrete injury. Second, *Spokeo* reaffirms that intangible harms identified by Congress or recognized at common law are also concrete injuries, and, as noted above, Congress determined Cheesecake's inclusion of more than the last five digits of Plaintiffs' credit card number on its transaction receipts subjects Plaintiffs to an unacceptable risk of identity theft, and violates their privacy interests.

Cheesecake's alternative bid for dismissal under Rule 12(b)(6) fails because a willful violation includes conduct that is "knowing" or "reckless," the facts plausibly show Cheesecake knew it was printing receipts violating FACTA, and plainly Cheesecake acted recklessly because it allowed its system to print receipts violating FACTA despite its awareness of its FACTA obligations. Courts in this District consistently rule these same material allegations plausibly allege

3

a willful violation of FACTA, and Cheesecake's motion to dismiss for failure to state a claim also should be denied.

Cheesecake's motion to dismiss has no support under post-*Spokeo* Article III standing precedent. This motion to dismiss is merely an attempt to have the judicial branch write FACTA out of the United States Code. Accordingly, Cheesecake's motion to dismiss should be denied.

## STATEMENT OF FACTS

On or about January 22, 2017, Plaintiffs Adriana Tibbetts and Darryl Tibbetts dined at one of Defendant's stores, located in the Mall at the Source, 1504 Old Country Road, Westbury, New York 11590 (hereafter referred to as the "Cheesecake Factory Westbury"). To pay for the dinner, Adriana Tibbetts used her Visa credit card. Following the transaction, Plaintiff Adriana Tibbetts received a receipt, which included both the first six numbers and the last four numbers of her Visa credit card. *See* ECF No. 1 ¶ 32.

After paying for their meal, Plaintiffs purchased two slices of cake from the bakery shop of the Cheesecake Factory Westbury. To pay for the slices of cake, Plaintiff Darryl Tibbetts used his Mastercard credit card. Following the transaction, Plaintiff Darryl Tibbetts received a receipt, which, upon information and belief, included both the first six numbers and the last four numbers of his credit card. *See* ECF No. 1 ¶ 33.

Cheesecake Factory knew the truncation requirements of 15 U.S.C. §1681c(g)(1) regarding credit card account numbers prior to printing receipts that contained 10 digits of Plaintiffs' credit card. Accordingly, Cheesecake either knowingly violated 15 U.S.C. §1681c(g)(1) or, alternatively, failed to take necessary steps of a known danger to prevent 15 U.S.C. §1681c(g)(1) from being violated, which is reckless conduct.

## ARGUMENT

**A. Applicable Legal Standard**

4

"Injury in fact is a low threshold . . ." *Ross v. Bank of Am., N.A.*, 524 F.3d 217, 222 (2d Cir. 2008). It "is not Mount Everest." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005) (Alito, J.). All that need be pleaded in order to establish Article III standing is an "'identifiable trifle'" of injury. *Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) ("*NRDC*") (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973)).

In weighing a Rule 12(b)(1) motion arguing that the facts as pleaded by the plaintiff are insufficient to establish Article III standing, a court must consider the plaintiff's allegations, and any documents referenced therein or attached thereto, in the light most favorable to the plaintiff. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016).

## B. FACTA's Truncation Right Is Substantive

"The Supreme Court has repeatedly affirmed the ability of Congress to 'cast the standing net broadly' and to grant individuals the ability to sue to enforce their statutory rights." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 635 (3d Cir. 2017), citing, *inter alia*, *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."). *Spokeo* likewise reaffirms that a statutory violation, by itself, "*can* be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S.Ct. at 1544.

As alleged in the Complaint, on multiple occasions, Cheesecake disclosed ten digits of Plaintiffs' credit card number in violation of their FACTA rights. To date, courts addressing standing challenges on similar facts have ruled that FACTA rights are substantive. *Wood, Altman*, *Guarisma*. Thus, a violation of FACTA rights is a concrete injury, i.e. "an invasion of a legally protected interest…" sufficient to confer Article III standing. *Spokeo*, 136 S.Ct. at 1548, *quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

## C. Cheesecake Caused Plaintiffs Multiple Concrete Injuries

Cheesecake's standing argument is principally based on its assertion that *Spokeo* allegedly shows Plaintiffs suffered no Article III injury. This argument is misplaced because *Spokeo* did not decide if the injury requirement was met in that case. Instead, *Spokeo* simply ruled the Ninth Circuit's analysis was incomplete, and remanded for further consideration. *Spokeo*, 136 S.Ct. at 1545 ("We take no position as to whether the Ninth Circuit's ultimate conclusion—that Robins adequately alleged an injury in fact—was correct."). Indeed, far from supporting Cheesecake's position, *Spokeo* simply reaffirms the long-standing requirement that Plaintiff allege an injury that is "concrete and particularized." *Spokeo*, 136 S.Ct. at 1545, citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *see also Schleisinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974).

*Spokeo* expressly states that "the violation of a procedural right granted by statute *can* be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S.Ct. at 1544 (first italics added). Indeed, *Spokeo* describes the required concrete injury as "an invasion of a legally protected interest…" *Id.* at 1548, *quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). *Spokeo* also reaffirms that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Spokeo*, 136 S.Ct. at 1549, quoting *Lujan, supra*. Any argument that Cheesecake's repeated violation of Plaintiffs' FACTA rights is not a sufficient injury is contrary to *Spokeo*.

*Spokeo* only states that a statutory procedural violation may or may not be sufficient. *See Spokeo*, 136 S.Ct. at 1550. However, the *Spokeo* majority does not discuss the concrete injury requirement in the context of substantive rights. *Church*, 2016 U.S. App. LEXIS 12414 at *11, fn.2 ("In *Spokeo*, the Court stated that a Plaintiff 'cannot satisfy the demands of Article III by alleging a bare procedural violation.' *Spokeo*, 136 S.Ct. at 1550. This statement is inapplicable to the allegations at hand, because Church has not alleged a procedural violation. Rather, Congress provided Church with a substantive right…"); *Altman,* 2016 U.S. Dist. LEXIS 92761

6

at *12 ("the majority opinion in *Spokeo* only focused on a violation of one of the FCRA's procedural requirements, as opposed to a substantive right...") (discussing FACTA).

Justice Thomas's concurrence fills this gap, confirming that in the context of substantive or "private" rights, the violation alone meets the concrete injury requirement:

> Common-law courts imposed different limitations on a plaintiff's right to bring suit depending on the type of right the plaintiff sought to vindicate. Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more. "Private rights" are rights "belonging to individuals, considered as individuals." 3 W. Blackstone, Commentaries *2 (hereinafter Blackstone). …. In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy.
>         * * *
> A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right. *See Havens Realty Corp.* v. *Coleman*, 455 U.S. 363, 373–374, 102 S.Ct. 1114, 71 L. Ed. 2d 214 (1982) (recognizing standing for a violation of the Fair Housing Act); *Tennessee Elec. Power Co.* v. *TVA*, 306 U.S. 118, 137–138, 59 S.Ct. 366, 83 L. Ed. 543 (1939) (recognizing that standing can exist where "the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege").

*Spokeo*, 136 S.Ct. at 1551 and 1553 (Thomas, J., concurring). Indeed, in *In re Barclays Bank PLC Sec. Litig.*, expressly adopted Justice Thomas' formulation, in holding that "[a] plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right." *In re Barclay's Bank,* 2016 WL 3235290 at *6.

*Havens Realty,* which was central to Justice Thomas' concurrence, is particularly instructive. A unanimous Supreme Court ruled that the violation of the plaintiff's statutory right not to be lied to about available housing constituted "injury in fact" -- even where the plaintiff had no intention of doing business with the defendant, and interacted with the defendant as a

7

"tester" fully expecting it to violate her rights:

> As we have previously recognized, "[the] actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . .'" *Warth v. Seldin*, [422 U.S. 490,] 500 [1975], quoting *Linda R. S.v. Richard D.*, 410 U.S. 614, 617, n. 3 (1973). Accord, *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972)(WHITE, J., concurring). Section 804(d), which, in terms, establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d).

*Havens Realty Corp.*, 455 U.S. at 373-74 (emphasis added); *see also Guarisma,* 2016 U.S. Dist. LEXIS 97229 at *9 ("the Supreme Court recognized where Congress has endowed plaintiffs with a substantive legal right, as opposed to creating a procedural requirement, the plaintiffs may sue to enforce such a right without establishing additional harm."), *citing Spokeo*, 13 S.Ct. at 1549. Accord, e.g., *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014) (Article III standing "is determined by 'whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." * * * "Whether a plaintiff has suffered an injury in fact" does not "turn . . . on the plaintiff's subjective experience of the harm.").

Cheesecake cannot dispute that Plaintiffs have meet the particularization element because Plaintiffs allege Cheesecake disclosed too much of their credit card numbers. In this regard, Cheesecake's actions affected them "in a personal and individual way." *Spokeo*, 136 S.Ct. at 1548. Accordingly, the only issue is whether Plaintiffs' injuries are "concrete."

An injury is "concrete" if it is real or *de facto*, *i.e.*, not abstract. *Spokeo*, 136 S.Ct. at 1548. This includes both tangible harms and intangible harms. *Spokeo*, 136 S.Ct. at 1549 ("we have

confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."),
and, *e.g.*, *Friends of the Earth*, 528 U.S. at 183 (alleged reduction in the "aesthetic" and
"recreational" value of a river is an injury in fact). Here, Cheesecake concedes a "risk of real harm"
can be enough. *Spokeo*, 136 S.Ct. at 1549.

As the Supreme Court explains:

> "Injury in fact" reflects the statutory requirement that a person be
> "adversely affected" or "aggrieved," and it serves to distinguish a
> person with a direct stake in the outcome of a litigation -- even though
> small -- from a person with a mere interest in the problem. We have
> allowed important interests to be vindicated by plaintiffs with no
> more at stake in the outcome of an action than a fraction of a vote,
> see *Baker v. Carr*, 369 U.S. 186 …. As Professor Davis has put it:
> "The basic idea that comes out in numerous cases is that an
> identifiable trifle is enough for standing  to fight out a question of
> principle; the trifle is the basis for standing and the principle supplies
> the motivation."

*Students*, 412 U.S. at 689, n.14 (citations omitted). *Spokeo* confirms the violation of a statute, by
itself, can also be a concrete harm. Under these standards, Cheesecake's disclosure of Plaintiffs
credit card information on its transaction receipt caused Plaintiffs multiple concrete injuries.

Cheesecake focuses significant time in its brief citing *Strubel v. Comenity Bank*, 842 F.3d
181 (2d Cir. 2016). However, *Strubel* is clearly distinguishable in certain respects and supportive
of Plaintiffs' claims in certain respects. In *Strubel*, a suit brought under the Truth In Lending Act
("TILA"), 15 U.S.C. §§ 1601 *et seq*., the Second Circuit applied *Spokeo*. The plaintiff in *Strubel*
sought statutory damages for an allegedly deficient credit card agreement, arguing that the
defendant had failed to disclose that:

> (1) cardholders wishing to stop payment on an automatic payment
> plan had to satisfy certain obligations; (2) [the defendant] was
> statutorily obliged not only to acknowledge billing error claims
> within 30 days of receipt but also to advise of any corrections made
> during that time; (3) certain identified rights pertained only to
> disputed credit card purchases for which full payment had not yet
> been made, and did not apply to cash advances or checks that
> accessed credit card accounts; and (4) consumers dissatisfied with a
> credit card purchase had to contact [the defendant] in writing or

electronically.

*Stubel,* 842 F.3d at 186. The defendant relied on *Spokeo* to argue that plaintiff lacked standing to assert these claims because they were procedural in nature.

As a threshold matter, the Second Circuit held that it did "not understand *Spokeo* categorically to have precluded violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing." *Id*. at 189. Instead, the Supreme Court made clear that "some violations of statutorily mandated procedures may entail the concrete injury necessary for standing," *id*. and "where Congress conferred [a] procedural right to protect a plaintiff's concrete interests," the critical inquiry is whether "the procedural violation presents a 'risk of real harm' to that concrete interest," *id*. at 190 (quoting *Spokeo*, 136 S.Ct. at 1549).

Under that framework, the Second Circuit concluded that the plaintiff still had standing to assert two of her four TILA claims concerning "required notice that (1) certain identified consumer rights pertain only to disputed credit card purchases not yet paid in full, and (2) a consumer dissatisfied with a credit card purchase must contact the creditor in writing or electronically." *Id*. Ultimately, the Court found that

> [t]hese disclosure requirements do not operate in a vacuum ... Rather, each serves to protect a consumer's concrete interest in "avoiding the uninformed use of credit," a core object of the TILA.... For that reason, a creditor's alleged violation of each notice requirement, by itself, gives rise to a "risk of real harm" to the consumer's concrete interest in the informed use of credit. Having alleged such procedural violations, Strubel was not required to allege "any *additional* harm" to demonstrate the concrete injury necessary for standing.

*Id*. at 190–91 (brackets, citations, and footnote omitted). Moreover, the Second Circuit held, with respect to those claims, that the plaintiff sought

> to vindicate interests particular to her—specifically, access to disclosures of her own obligations ... The failure to provide such required disclosure of consumer obligations thus affects Strubel "in a personal and individual way," and her suit is not "a vehicle for the vindication of the value interests of concerned bystanders" or the

10

public at large.

*Id*. at 191 (citations omitted). Read in conjunction, *Spokeo* and *Strubel* reaffirm the long-standing principle that Congress can recognize new interests—either tangible or intangible—through legislation and confer private rights of action to protect those interests. As a result, *Strubel* actually supports Plaintiffs claims because the *Strubel* Court still found two of the asserted statutory violations, standing alone, to be concrete injuries. *Id*. at 190-91 ("Having alleged such procedural violations, Strubel was not required to allege 'any additional harm' to demonstrate the concrete injury necessary for standing."), *quoting Spokeo*, 136 S.Ct. at 1549.

Cheesecake also cites *Nicklaw v. Citimortgage*, 839 F.3d 998 (11th Cir. 2016), a case involving a state statute that required the defendant to record a release of mortgage within 30 days after the plaintiff paid off his mortgage. The defendant recorded the release, but not within 30 days. Two years later, the plaintiff sued. *Id*. at 1003. That Court ruled there was no concrete injury. However, *Nicklaw* is supportive of Plaintiffs' case. Indeed, *Nicklaw* recognizes a statutory violation can meet the concrete injury requirement if it involves a "harm or risk of harm." *Id*. As alleged in the Complaint, this case involves both because: (1) Plaintiffs' substantive FACTA rights were violated; (2) they were subjected to a real risk of identity theft as determined by Congress; (3) their privacy interests were breached, and (4) they was forced to secure the receipt or destroy it, to prevent further disclosure.

The statute in *Nicklaw* had both a substantive component (the right to a recorded release of mortgage) and a procedural component (the obligation to record the release within 30 days). *See Nicklaw*, 839 F.3d at 1000. The plaintiff only alleged a violation of the procedural component because, by the time he sued, the release had been recorded. *Id*. at 1003. He did not identify any legislative determination of harm or risk of harm stemming from the violation. *See Ruk v. Crown Asset Mgmt., LLC*, 2017 U.S. Dist. LEXIS 41797, *18 (N.D. Ga. Mar. 22, 2017) ("*Nicklaw* involved a mere filing deadline violation with no consequence."). Moreover, *Nicklaw* involved a state statute which, unlike acts of Congress, might not give rise to an Article III injury. *See Khan*

11

*v. Children's Nat'l Health Sys.*, 188 F.Supp.3d 524, 534 (D. Md. 2016). (plaintiff gave "no authority for the proposition that a state legislature or court, through a state statute or cause of action, can manufacture Article III standing for a litigant…").

Cheesecake also cites *Meyers v. Nicolet Rest of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016), which dealt with FACTA, but is otherwise distinguishable. The plaintiff alleged a disclosure of his card expiration date, not the account number. *Id.* at 725. According to *Meyers*, Congress determined that disclosing the expiration date is harmless, and passed an amendment reflecting that belief. *See id.* at 727 ("Congress has specifically declared that failure to truncate a card's expiration date, without more, does not heighten the risk of identity theft."). However, the amendment did not alter Congress's determination that the violation here, *i.e.*, disclosing too much of the card number, creates a real risk of identity theft. *See id.* at 728 ("[e]xperts in the field agree that proper truncation of the card number …" is what prevents fraud). To the contrary, FACTA still requires merchants to truncate the card number (and expiration date). 15 U.S.C. §1681c(g)(1).

*Meyers*' relevance is also questionable because it does not address *Havens Realty*, as it just assumes the violation of a substantive right is not itself a concrete injury. *See id.* at 727, fn.2. This puts *Meyers* in tension with *Havens Realty* and *Meyers*' own Circuit's authority, which squarely holds that the violation of one's substantive rights, standing alone, is a concrete injury. *See Bellwood v. Dwivedi*, 895 F.2d 1521, 1526-27 (7th Cir. 1990) (discussing *Havens Realty*, and finding "Congress can create new substantive rights …, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury."). In short, *Meyers,* which only addresses expiration date claims, is clearly and wholly inapposite.

Cheesecake similarly relies on *Cruper-Weinmann v. Paris Baguette America, Inc*., Case No. 13-CIV-7013, -- F. Supp.3d --, 2017 WL 398657 (S.D.N.Y. Jan. 30, 2017) and *Fullwood v. Wolfgang's Steakhouse, Inc.*, Case No. 13-CIV-11 07174, 2017 WL 377931, (S.D.N.Y. Jan. 26, 2017), which only address expiration date claims, and, therefore, are also clearly and wholly inapposite to this lawsuit.

Cheesecake also cites *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511 (D.C. Cir. 2016) and *Lee v. Verizon Comms., Inc.*, 837 F.3d 523 (5th Cir. 2016). First, these cases do not discuss FACTA. In *Hancock*, the defendant simply asked the plaintiff for a zip code. *Hancock*, 830 F.3d at 514. In *Lee*, the defendant was alleged only to have failed to meet a statutory obligation owed to an ERISA benefit plan, not to the plaintiff. *Lee*, 837 F.3d at 545. In short, the foregoing cases cited by Defendant have no bearing on whether Plaintiffs suffered a concrete injury.

Defendant also relies heavily on *Whalen v. Michaels Stores, Inc.*, Case No. 16-260, -- Fed. Appx. --, 2017 WL 1556116 (2d Cir. May 2, 2017), to assert the position that Plaintiffs' claimed injuries are insufficient to confer standing. However, *Whalen* is not a case that involves FACTA, or a breach of any other Federal statute for that matter. In fact, in *Whalen*, the Plaintiffs merely asserted claims for breach of implied contract and general violations of New York General Business Law § 349 (which is a general catchall statute for deceptive acts and practices of businesses). As such, the Article III standing analysis in *Whalen* is completely inapplicable to this case. Moreover, *Whalen* is also distinguishable because the Defendant, Michaels Stores, reported that third-party hackers used a highly-sophisticated malware or malicious software, to retrieve the credit and debit card information from its systems. Here, there can be no dispute that Cheesecake itself violated FACTA, not some third-party hacker committing a crime against Cheesecake.

Simply put, in cases where plaintiffs sue to enforce a substantive legal right conferred by statute, as Plaintiffs have done in this case, they have standing to pursue that claim without need to allege a "material risk of harm" because the infringement of that right constitutes, in and of itself, a concrete injury. *See, e.g.*, *Church v. Accretive Health, Inc.*, 654 Fed.Appx. 990, 995 & n.2 (11th Cir. 2016) (per curiam); *Matera v. Google Inc.*, No. 15–CV–04062–LHK, 2016 WL 5339806, at *11–12 (N.D. Cal. Sept. 23, 2016); *Prindle v. Carrington Mortg. Servs., LLC*, No. 3:13–CV–1349–J–34PDB, 2016 WL 4369424, at *8 (M.D. Fla. Aug. 16, 2016).

Indeed, there is a meaningful distinction between the direct violation of a specific statutory interest that Congress has recognized—for example, the right to not have a business print more

13

than the last 5 digits of their credit card number upon any receipt provided to the cardholder at the point of sale or transaction—and an ancillary procedural infraction that may or may not materially harm that interest. The former, if sufficiently alleged, as the Complaint does in this case, establishes concrete injury for purposes of Article III. Accordingly, Defendant's motion to dismiss should be denied in its entirety.

### D.  <u>Plaintiffs Sustained a Privacy Injury</u>

Courts' and Congress's ability to define the boundaries of individuals' privacy rights stems from ancient legal concepts. The right of privacy is "derived from natural law," and was recognized by Roman and early-English jurisprudence. *Pavesich v. New Eng. Life Ins. Co.*, 50 S.E. 68, 70 (Ga. 1905), *cited with approval in Ali v. Playgirl, Inc.*, 447 F. Supp. 723, 731 (S.D.N.Y. 1978) (Gagliardi, J.); *see also* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 195 (1890) ("[N]umerous mechanical devices threaten to make good the prediction that 'what is whispered in the closet shall be proclaimed from the house- tops.'").

Moreover, and especially relevant here, common law recognizes a specific right to privacy of information pertaining to individuals' financial accounts. Nearly a century ago, the English Court of Appeal identified the common-law right to strict confidence of bank account information, arising from an implied contractual duty of nondisclosure. *See Tournier v. Nat'l Provincial & Union Bank of Eng.*, (1924) 1 K.B. 461, *cited with approval in Sec. & Exchange Comm'n v. Gib. Global Sec., Inc.*, No. 13 Civ. 2575 (GBD) (JCF), 2015 U.S. Dist. LEXIS 43773, at *7 (S.D.N.Y. Apr. 1, 2015) (Francis, Mag. J.).

This concept dovetails with the broader notion that Congress may create substantive rights in order to protect one party to a financial relationship from harmful conduct by the other party that may be difficult to prove or trace. *See Donoghue*, 696 F.3d at 177–78, 180 (corporation suffered a concrete harm when an investor that had beneficial ownership of more than 10% of the stock violated implied-fiduciary relationship created by the Securities Exchange Act of 1934); *In re Barclays Bank PLC Sec. Litig.*, 2016 U.S. Dist. LEXIS 75663, at *18–22

14

(statutory-damages provision of Section 11 of the Securities Act of 1933 protects shareholders where issuer has allegedly included falsities in stock registration statement).

Here, Cheesecake accepted a duty not to mishandle consumers' personal financial data when it chose to accept credit cards as a means of payment. FACTA codified that duty as a matter of federal statutory law. When Cheesecake misprinted Plaintiffs' private financial information, it not only violated FACTA, it also breached Plaintiffs' privacy rights.

### E. __Plaintiffs' Lost Time is a Concrete Injury__

Plaintiffs' claim for lost time is not a "throwaway allegation" as Defendant claims. Further, Defendant's reliance on *Whalen* is again inapplicable because that case does not invoice FACTA violations. Here, Plaintiffs have suffered real and concrete injury as a result of Defendant's FACTA violations. *See* Tibbetts Declaration, attached as Exhibit 1.

### F. __Plaintiffs Adequately Pled a Willful FACTA Violation__

Cheesecake does not dispute that it violated FACTA by printing more than the last five digits of Plaintiff's credit card account on his transaction receipt. Instead, Cheesecake only claims Plaintiff has not alleged enough facts to plausibly show its violation was "willful." However, the Supreme Court holds that a willful violation is one that is knowing *or* reckless, and that a plaintiff need not allege detailed facts to state a claim that is plausible. Here, Plaintiffs allege ample facts to show Cheesecake's violation was both knowing *and* reckless.

Cheesecake's violation was "knowing" because, among other things, Cheesecake concedes it was fully aware of its obligations under FACTA. Despite this awareness, Cheesecake allowed its new payment system to violate FACTA's express prohibition against disclosing more than the last five digits of credit and debit card numbers on receipts. In fact, Cheesecake was acutely aware of these FACTA violations each time its restaurant employees printed and handled the receipts.

Cheesecake's violation was reckless because the Supreme Court defines "recklessness" as conduct creating a risk of violating the law that is so obvious it should be known, and FACTA's five digits truncation requirement is simple, absolute and unambiguous, Cheesecake was fully aware of

it, and thus Cheesecake should have known its actions were illegal. *See Redman v. IMAX Chicago Theatre LLC*, 2015 WL 327130 (N.D. Ill. Jan. 23, 2015) ("The known or obvious risk in this case would be failing to delete the expiration date on the consumer's credit- card or debit-card purchase receipt.")

Cheesecake's motion does not separately analyze the "knowing" and "recklessness" tests for willfulness. Instead, it just lumps the two concepts together under the general rubric of "willfulness," without attempting to explain why Cheesecake thinks Plaintiff's allegations are insufficient to clear the low plausibility threshold of Rule 12(b)(6). Further, Cheesecake improperly asks the Court to draw fact inferences in its favor, contrary to the well-established rule that fact inferences are only to be drawn in Plaintiff's favor on a Rule 12(b)(6) motion. Plaintiff easily meets the low bar for alleging a plausible claim that Cheesecake's violation was knowing or reckless. Plaintiff only needs to *plausibly* allege one or the other. Here, Plaintiffs adequately alleges both knowing and reckless violations of FACTA. Accordingly, Cheesecake's request to dismiss this case under Federal Rule 12(b)(6) should be denied.

### G.  Cheesecake Must Prove That Plaintiff's Willfulness Allegation Is Nothing More Than Speculative

As movant, Cheesecake has the burden of proving the complaint does not adequately plead his claim. To adequately plead a claim, a complaint "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means a complaint need only contain enough facts to make the claim "plausible." *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010), *citing Twombly*, 550 U.S. at 570.

A claim is plausible if, taking Plaintiff's allegations as true and construing them in his favor, the complaint allows the court to reasonably infer that Cheesecake is liable for the conduct alleged. *Speaker*, 623 F.3d at 1380, *citing Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Plausibility does not require specific or detailed allegations. *Erickson*, 551 U.S. at 93 ("Specific facts are not necessary."); *Twombly*, 550 U.S. at 555 ("a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations."). Moreover, it is not necessary to plead facts that show it is "likely" that Plaintiff will win. *Speaker*, 623 F.3d at 1380 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."), *quoting Twombly,* 550 U.S. at 556.

Instead, Plaintiff need only allege enough facts, taken as true and construed in his favor, to show his right to recover is not speculative. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level [cite omitted] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Accordingly, to justify its request for dismissal under Rule 12(b)(6), Cheesecake must show Plaintiffs' willfulness allegation is so implausible as to be speculative. As explained below, Cheesecake has not, and cannot, meet that burden.

### H. Plaintiffs' Willfulness Allegation is Not Speculative

As amended by FACTA in 2003, the Fair Credit Reporting Act ("FCRA") plainly states:

> no person that accepts credit cards or debit cards for the transaction of business shall print *more than the last 5 digits of the card number* or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. §1681c(g)(1) (emphasis added). A willful violation of this prohibition subjects the violator to statutory damages. *Id.*, citing 15 U.S.C. §1681n(a)(1)(B).

It is undisputed that Plaintiffs have adequately alleged Cheesecake violated FACTA by printing transaction receipts that revealed ten digits of Plaintiffs', and the putative class members', debit and credit card numbers. ([*See* ECF No. 1, ¶32, ¶33] and 15 U.S.C. §1681c(g)). Instead, Cheesecake simply claims Plaintiff has not plausibly alleged that Cheesecake's undisputed violation was "willful."

Under the FCRA (and, therefore, FACTA), a violation is "willful" if it is either knowing *or* reckless. *Safeco Ins. Co of Am. v. Burr*, 551 U.S. 47, 57 (2007); *see also Speer v. Whole Food Mkt. Group, Inc.*, 2015 WL 1456981, *3 (M.D. Fla. Mar. 30, 2015) (willfulness covers both "reckless violations as well as knowing violations of the FCRA."), *citing Safeco*, 551 U.S. at 57-

58. Cheesecake's arguments incorrectly lump the knowing and reckless concepts together, as if it were a single test. However, as explained below, the test requires a distinct analysis for knowing or reckless, and Plaintiffs' allegations plausibly show that Cheesecake's violation of the five-digit truncation requirement meets the requirement for at least one, if not both, knowing or reckless. Therefore, Cheesecake's request for dismissal under Rule 12(b)(6) should be denied.

## I.   **Plaintiff Plausibly Alleged a Knowing Violation**

### iii.   **Plaintiff's Allegations Are Sufficient**

The Complaint adequately pleads that Cheesecake's violation of FACTA's five-digit requirement was knowing. As Cheesecake admits, ample facts demonstrate Cheesecake's awareness of its FACTA obligations. These include that Cheesecake had actual knowledge of the statute's requirements because FACTA has been the law since 2003, it was widely published among retailers, many credit card companies, including, but not limited to, VISA and MasterCard, advised companies of the need for compliance with the FACTA Receipt Provision, including Defendant, Cheesecake was contractually bound not to print any more than the last five digits of credit card and debit card account numbers on any electronically printed receipts provided to the cardholder at the point of sale, Cheesecake was aware of the dangers imposed upon consumers through its failure to protect its consumers from the theft of credit card numbers. [ECF No. 1 at ¶¶ 12, 17, 18, 23, 26, 81, 82, 84, 89, 91, 92].

Contrary to what Cheesecake claims, however, the Complaint also plausibly alleges Cheesecake's awareness of its violations. Cheesecake allowed its systems to print ten digits of its customers' card account numbers on transaction receipts. *Id.*, ¶1, ¶32, ¶33. Moreover, the violations were apparent to Cheesecake each of the numerous times they occurred because the card account numbers were displayed on the face of the receipt for the Cheesecake restaurant employees (its agents) that handled the receipts to see. *See Id.*, ¶32, ¶33, ¶94; *see also In re Inv'rs Funding Corp. of New York Sec. Litig.*, 523 F Supp 533, 540 (S.D.N.Y. 1980) ("the knowledge of an agent

acquired within the scope of his employment is imputed to the principal…). Often, the duplicate credit card receipts are left on the table for anyone in the restaurant to see.

Courts have routinely found similar allegations sufficient to plead a willful violation of FACTA. *See Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716, Doc. 26 (S.D. Fla. Sept. 2, 2015) ("Courts within this Circuit, including this Court, when faced with allegations similar to Plaintiff's here, found such allegations to be sufficient to state a claim."), citing *Steinberg v. Stitch & Craft, Inc.*, 2009 WL 2589142, *1 (S.D. Fla. Aug. 18, 2009) (collecting cases); *see also Lavery v. Radioshack Corp.*, 2014 WL 2819037, *2 (N.D. Ill. June 23, 2014) ("Such allegations have repeatedly been held sufficient to survive the pleading stage.") (collecting cases); *In re TJX Companies, Inc.*, 2008 WL 2020375, *2 (D. Kan. May 9, 2008) ("courts have almost uniformly rejected the argument that such allegations do not sufficiently allege willful violations of the statute.") (collecting cases). Accordingly, Plaintiff plausibly alleges a knowing violation.

### iv.     **Cheesecake Misconstrues the Facts and the Test for Knowing Violation**

Cheesecake only claims Plaintiffs do not plausibly allege Cheesecake's awareness of its violations, and it cites two cases that putatively found a failure to plausibly allege a knowing violation where the plaintiff alleged no facts to show defendant's awareness of the violations. *See Torongo v. Roy*, 176 F.Supp.3d 1320, 1324 (S.D. Fla. 2016); *King v. MovieTickets, Inc.*, 555 F.Supp.2d 1339, 1341 (S.D. Fla. 2008)). However, Cheesecake's argument and reliance on these cases is misplaced because, as shown above, the Complaint also plausibly alleges Cheesecake's awareness of the violations.

Cheesecake also claims Plaintiff does not plausibly allege a knowing violation because allegedly the complaint "raises reasonable inferences that Defendant was trying to comply with FACTA and any lapse was inadvertent…" [Defendant's Memo of Law at p.23]. This argument is a meritless because it asks the Court to draw a variety of fact inferences in Cheesecake's favor, which is contrary to the rule that the complaint be construed in Plaintiff's favor. *See Bernheim v.*

*Litt,* 79 F.3d 318, 321 (2d Cir.1996); *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699–700 (2d Cir.1994). Cheesecake's argument also fails because even if the Court were to assume Cheesecake tried, but woefully failed, to comply with FACTA, that does simply not disprove Cheesecake's violation was knowing for several reasons. First, Cheesecake conflates an intentional violation with a knowing violation, and asks the Court to assume Cheesecake's violation cannot be knowing if one can infer that the violation was unintentional.  *See* Cheesecake's Memorandum of Law at p. 23 ("Plaintiff's non-existent allegations concerning The Cheesecake Factory's *intent*…") (italics added). However, the Supreme Court rejects this argument, holding that intent and knowledge are distinct concepts, and that a failure to prove intent does not defeat a showing that the violation was "willful." *See Safeco Ins. Co.*, 551 U.S. at 56, fn. 8.

Second, Cheesecake's argument fails because an unintentional violation can still be knowing. Even assuming Cheesecake may not have intentionally programmed its systems to violate FACTA's truncation requirement, Cheesecake was still aware that its system was printing receipts that violated FACTA. Here, the Complaint plausibly shows Cheesecake was aware of the violations because Cheesecake was reminded of the violations each time its restaurant employees handled the receipts. Thus, at best, Cheesecake's inference-based "attempted compliance" theory only creates a fact issue for resolution in discovery, not on a motion to dismiss. *See Redman,* 2015 WL 327130, *2 (ruling the defendant's alleged attempted compliance with FACTA created a fact issue to be resolved in discovery).

The cases Cheesecake cites for its "attempted compliance" argument also fail because, like Cheesecake itself, the cases erroneously suggest Plaintiff must plead an "intentional" violation instead of simply a "knowing" violation. *See Vidoni v. Arcadia Corp.*, 2012 WL 1565128, *3 (D. Me. Apr. 27, 2012) ("there must be some allegation that the Defendant knew of the standard and voluntarily or intentionally violated it."); *Alexander v. Golden Nugget, Inc.*, 2014 WL 12576611, *3 (D. Nev. Jul. 18, 2014) (following *Viondi*).  However, the Supreme Court holds there is no need to prove intent, as a knowing violation occurs if Cheesecake was aware of it regardless of its intent,

and Plaintiffs alleged facts showing Cheesecake was plausibly aware. In sum, Cheesecake does not meet its burden of proving that Plaintiffs have failed to plausibly allege that Cheesecake's violations were knowing.

### J.   The Complaint Plausibly Alleges a Reckless Violation

#### i.   Plaintiff's Allegations Are Sufficient

Unlike for a "knowing" violation, "recklessness" is an objective standard. *Safeco*, 551 U.S. at 68-69. It does not require subjective knowledge. *See Rosenthal v. Longchamp Coral Gables LLC*, 2009 WL 1854846, *2 (S.D. Fla. June 29, 2009), *citing Murray v. New Cingular Wireless Servs., Inc.* 523 F.3d 719, 726 (7th Cir. 2008). Instead, a violation is reckless "if it was 'objectively unreasonable' in light of 'legal rules that were 'clearly established' at the time.'" *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 249 (3rd Cir. 2012), *quoting Safeco*, 551 U.S. at 69-70 ("Safeco's reading of the statute, albeit erroneous, was not objectively unreasonable.").

Plaintiffs' allegations easily support both elements. First, Cheesecake's conduct was objectively unreasonable because Cheesecake allowed its payment system to routinely print more than the last five digits of its customers' credit card account numbers on transaction receipts even though FACTA absolutely and unambiguously prohibits this practice. *See Tchoboian v. FedEx Office & Print Servs.*, No. CV10-1008, 2011 WL 12842230, *4 (C.D. Cal. Nov. 14, 2011) ("FACTA is unambiguous with respect to the limitations it imposes …. FACTA clearly prohibits the printing of 'more than the last 5 digits of the card number....'"); *Buechler v. Keyco, Inc.*, No. 09-2948, 2010 WL 1664226, *2 (D. Md. Apr. 22, 2010) (§1681c(g)(1) "is unambiguous."). Cheesecake does not and cannot articulate any reasonable interpretation of FACTA that would allow it to print more than the last five digits of card account numbers on its transaction receipts in any circumstance. *See*, *e.g.*, *Redman*, 768 F.3d at 627 ("The known or obvious risk in this case would be failing to delete the expiration date on the consumer's credit-card or debit-card purchase receipt.")

Second, FACTA's five-digit truncation requirement is clearly established. FACTA has been

21

the law in the United States since 2003. Moreover, its enactment was widely publicized, all major credit card organizations put their merchants (including Cheesecake) on notice of the requirement and contractually require them to comply with it. Indeed, the FTC issued a business alert to merchants expressly warning that under FACTA "[y]ou may include no more than the last five digits of the card number" on transaction receipts (*Buechler*, 2010 WL 1664226, *2). Further, FACTA was put back in the spotlight in 2008 when Congress gave amnesty for past violations of FACTA so long as the merchant was not violating the five-digit truncation requirement. Since 2008, FACTA's truncation requirement has remained unchanged and continued to apply to all merchants. Accordingly, Plaintiff has also plausibly alleged that Cheesecake's violation of the five-digit truncation requirement was at least reckless.

### ii. Cheesecake Offers Nothing to Show that Plaintiffs Fail to Plausibly Allege a Reckless Violation

Here, Cheesecake's motion simply lumps the recklessness concept together with its discussion of whether Plaintiffs sufficiently alleged a knowing violation (as if a knowing violation and a reckless violation are the same). However, the Supreme Court has previously held recklessness and knowing are note the same. *Safeco*, 551 U.S. at 68-69. Cheesecake's arguments about whether Plaintiff has plausibly alleged a "knowing" violation have no bearing on whether Plaintiff has plausibly alleged a reckless violation because "recklessness" is an objective test, not a subjective test. *Id*.

Cheesecake's request that the Court "infer" that Cheesecake "attempted" to comply also fails for recklessness because even if Cheesecake "attempted" to comply, that does not preclude a finding of recklessness. A violation is reckless if Cheesecake's conduct (printing more than five digits of the card number on a receipt) is unreasonable given the statute's requirements. Here, there is no way to reasonably read FACTA to allow Cheesecake to print more than the last five digits of the card number on the receipt because that prohibition is clear, unambiguous, and well-established. To be sure, there is no reasonable way to read FACTA to allow Cheesecake to print ten digits of its customers' card numbers on its receipts, as it did here. [ECF No. 1, ¶32, 33].

The inapposite district court cases Cheesecake cites to argue against a knowing violation do not help it on the recklessness issue. Like Cheesecake itself, the cases fail to differentiate between a "knowing" violation and a "reckless" violation, erroneously treating these two distinct concepts as one.

The one case Cheesecake cites that discusses recklessness separately from the concept of a knowing violation, *Vidoni,* 2012 WL 1565128, misstates the test for recklessness. As discussed, the Supreme Court holds that recklessness is an objective test that asks only whether the "defendant's conduct was 'objectively unreasonable' in light of 'legal rules that were 'clearly established' at the time." *Fuges*, 707 F.3d at 249, *quoting in part Safeco*, 551 U.S. at 69-70. However, *Vidoni* suggests recklessness also requires facts to show that printing more than the last five digits of the card number on a receipt creates "an 'unjustifiably high risk of harm'" to Cheesecake's customers. *Vidoni* at *2.  If that reading was correct, it would be harder to plead a reckless violation than a knowing violation. However, as other courts explain, that reading is not correct because:

> [t]his argument rests on an isolated excerpt from *Safeco* and, consequently, on an overly narrow reading of the Supreme Court's holding in that case. The Court in *Safeco* used the term 'risk of harm' only in the context of analogizing 'recklessness' in FACTA to the common law meaning of 'recklessness' in tort law. The significance of the Court's holding in *Safeco* was in reading the statutory language 'willfully fails to comply' as reaching reckless FCRA violations and in rejecting the defendant insurance companies' argument that the use of the term 'willfully' limits liability under § 1681n(a) to knowing violations. *Id.* at 2210. Thus, it is the reckless disregard of statutory duties (not harm) that makes a violation willful. *Id.* at 2208 (referring to reckless disregard of the law as willful), *Id.* at 2215 (discussing reckless disregard in terms of 'risk of violating the law'). Nowhere did the Court in *Safeco* suggest that the 'risk of harm' standard from tort law is incorporated into the FCRA.

*Ramirez v. Midwest Airlines, Inc.*, 537 F.Supp.2d 1161, 1169 (D. Kan. 2008); *see also Soualian v. Int'l Coffee & Tea, LLC*, 2008 WL 410618, *3 (C.D. Cal. Feb. 9, 2008) ("The Court also disagrees with Defendant's characterization of the reckless standard as requiring a risk of harm.")

Congress already determined that printing more than the last five digits on credit card receipts creates a real and unacceptable risk of harm, so it passed a law that categorically prohibits this conduct. *See*, *e.g.*, *Redman*, 768 F.3d at 626 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it."). Thus, to plausibly allege a reckless violation, it is only necessary that Cheesecake's practice of printing ten digits of credit card numbers on transaction receipts could be viewed as unreasonable given the statute's express prohibition against that conduct. That is plainly the case here. *See Id.* at 627 ("The known or obvious risk in this case would be failing to delete [all but the last five digits of the card account number] on the consumer's credit-card or debit-card purchase receipt."). Accordingly, even if the complaint does not plausibly allege a knowing violation of FACTA's five-digit requirement (which it does), at the very least it plausibly alleges a reckless violation of that requirement. Cheesecake does not meet its burden of showing otherwise. Cheesecake's request for dismissal under Federal Rule 12(b)(6) should be denied.

## **CONCLUSION**

Plaintiffs suffered multiple injuries, and, therefore, have standing in this lawsuit. Moreover, Plaintiffs' Complaint also plausibly alleges Cheesecake's violation of their FACTA rights was knowing or reckless, and thus willful. Therefore, Cheesecake's motion to dismiss should be denied.

Dated: Malverne, New Yok
      June 9, 2017

                        Respectfully submitted,

                          /s/
                        _____
                        Joseph P. Fusco, Esq. (JF8874)
                        IACONIS FUSCO, LLP
                        Attorneys for Plaintiffs and the Class
                        340 Trinity Place
                        Malverne, NY 11565
                        (516) 535-9295